```
-----------------------------------X------------------------------
P.P.H., an infant, by his mother :UNITED STATES DISTRICT COURT
and natural guardian, JESSICA     :SOUTHERN DISTRICT OF NEW YORK
PEREZ,                            :
                                  :
             Plaintiff(s),        :
                                  : CASE No.:_____
      -against-                   :
                                  : CIVIL ACTION
                                  :
THE CITY OF NEW YORK, POLICE      :    COMPLAINT
OFFICER LUIS REYES, DETECTIVE     :
DANIEL BRADY,DETECTIVE DAVID      :
TERRELL, and DAVID SLOTT,         :    PLAINTIFF DEMANDS
                                  :      TRIAL BY JURY
                                  :
             Defendant(s).        :
-----------------------------------X------------------------------
```

TAKE NOTICE, the Plaintiff, P.P.H., hereby appears in this action by his attorneys, Nwokoro & Scola, Esquires, and demands that all papers be served upon them, at the address below, in this matter.

Plaintiff, P.P.H., by his attorneys, Nwokoro & Scola, Esquires, complaining of the defendants, The City of New York, Police Officer Luis Reyes, Detective Daniel Brady, Detective David Terrell, and Assistant District Attorney David Slott, collectively referred to as the Defendants, upon information and belief alleges as follows:

## NATURE OF THE ACTION

1.   This is an action at law to redress the deprivation of rights secured to the plaintiff under color of statute, ordinance, regulation, custom, and or to redress the deprivation of rights, privileges, and immunities secured to the plaintiff by the Fourth, Fifth and Fourteenth

Amendments to the Constitution of the United States, and by Title 42 U.S.C. § 1983 [and § 1985], and further arising under the law and statutes of the State of New York].

## JURISDICTION

2.  The jurisdiction of this Court is invoked under 28 U.S.C. §1343(3), this being an action authorized by law to redress the deprivation of rights secured under color of state and city law, statute, ordinance, regulation, custom and usage of a right, privilege and immunity secured to the plaintiff by the Fourteenth Amendment to the Constitution of the United States.  Jurisdiction of this court exists pursuant to 42 USC §1983 and under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

3.  All causes of action not relying exclusively on the aforementioned federal causes of action as a basis of this Court's jurisdiction are based on the Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear state law causes of action. The events, parties, transactions, and injuries that form the basis of plaintiff's federal claims are identical to the events, parties, transactions, and injuries that form the basis of plaintiff's claims under applicable State and City laws.

4.  As the deprivation of rights complained of herein occurred within the Southern District of New York, venue is proper in this district pursuant to 28 U.S.C. §§1391 (b) and (c).

## PARTIES

5.  Plaintiff P.P.H., is an infant under the age of 18 who resides in the Bronx, City and State, of New York.

6.  The actions which form the underlying basis for this case all took place in the County of Bronx, within the

2

jurisdiction of the Southern District of New York.

7.   Defendants Luis Reyes, Daniel Brady, and David Terrell are police officers for the City of New York acting under color of state law. They are being sued in both their individual and official capacities.

8.   Defendant David Slott is an Assistant District Attorney from the Bronx District Attorney's Office involved in the investigation and prosecution of the plaintiff and is being sued in his individual and official capacities.

9.   The Defendant, City of New York is a municipality in the State of New York and employs the individually named police officers herein.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

10.  On or about June 7, 2016, infant plaintiff P.P.H., while attending High School, was caused to be arrested by police officers from the 42nd Precinct of the New York City Police Department (NYPD) acting at the behest of  Police Officer Luis Reyes, Detective Daniel Brady and Detective David Terrell.

11.  The name of the police officers who actually physically apprehended and detained the plaintiff is currently unknown to the plaintiff but plaintiff was arrested based on a false accusatory instrument filed under the name of defendant Reyes wherein plaintiff was accused of having participated in a robbery that was alleged to have occurred on June 2, 2016.

12.  That the alleged robbery of June 2, 2016, was a fabrication and the result of a criminal conspiracy between Detective Daniel Brady, Detective David Terrell, and Police Officer Luis Reyes, to unlawfully arrest, detain, charge, prosecute and imprison the infant plaintiff P.P.H.

13. Prior to the arrest of P.P.H., on or about June 2, 2016, Detectives Brady and Terrell took illegal steps to facilitate the arrest and prosecution of plaintiff when they falsely arrested William Stevens, a third party, and forced him to sign a statement and photo array stating that P.P.H., was a participant in a robbery, when in fact, Detectives Brady and Terrell fabricated this story and knew that it was false.

14. Detectives Terrell and Brady unduly influenced Mr. Stevens by arresting him without cause, beating him up, threatening to beat him up, threatening to arrest him, and threatening to detain him indefinitely if he did not identify P.P.H., as a participant in the said robbery.

15. Detectives Terrell and Brady coerced and intimidated Mr. Stevens until he was completely under their control and then instructed him to identify P.P.H., as a participant in a robbery knowing full well that P.P.H. was not involved in the robbery incident which was a fabrication.

16. Assistant District Attorney David Slott participated in interrogation of William Stevens and also attempted to use threats and intimidation to procure false testimony against P.P.H. from Mr. Stevens.

17. Approximately two weeks after June 2, 2016, Mr. Stevens received a letter from ADA Slott inviting him to the Offices of the District Attorney for an interview with ADA Slott.

18. During this interview, ADA Slott showed Mr. Stevens the statement with a photograph of P.P.H., on it, which Mr. Stevens had signed under duress from Detectives Terrell and Brady and asked Mr. Stevens to authenticate the statement.

19. Mr. Stevens informed ADA Slott that the statement was false and that he signed that statement under duress because

Detectives Terrell and Brady had arrested, harassed, beaten him, and had threatened him with more of the same if he did not sign the statement.

20.  Mr. Stevens informed ADA Slott that he did not know P.P.H., and had never seen him before nor had he ever seen P.P.H. involved in a robbery on June 2, 2016, or on any other day. However, ADA Slott told Mr. Stevens that he, Stevens, had to testify as a witness that P.P.H., participated in the robbery, and that if Stevens did not so testify, ADA Slott will have Detectives Terrell and Brady come to Steven's house and harass him further. ADA Slott threatened Mr. Stevens with the prospect of more harassment from Detectives Terrell and Brady, if Mr. Stevens did not falsely testify against P.P.H.

21.  Despite Mr. Slott's threats, Mr. Stevens refused to repeat, authenticate or confirm the false and falsely suborned testimony against P.P.H. At this time, ADA Slott ended the interview by standing up and saying to Mr. Stevens, "you are going to regret, this. You are going to have problems now".

22.  True to the threat from ADA Slott, Mr. Stevens was stopped harassed and arrested by Detective David Terrell multiple times following his interview with ADA Slott.

23.  Police Officer Luis Reyes was aware that P.P.H., did not actually participate in a robbery and that his identification by Mr. Stevens was a wrongfully obtained fabrication, but despite this fact, Officer Reyes conspired with Detectives Brady and Terrell and signed an accusatory instrument charging P.P.H. with various crimes arising out of an alleged robbery on June 2, 2016.

24.  Subsequent to his arrest and detention at the premises of his High School on or about June 7, 2016, Plaintiff P.P.H.

was brought to the NYPD's 42nd Precinct, and then to Central Booking, and then was arraigned in Bronx Criminal Court where he was charged with Robbery in the first degree; robbery in the third degree; grand larceny in the fourth degree; and menacing, all alleged to have been in regard to a robbery on June 2, 2016, at 1309 Washington Avenue, Bronx, New York. Following his plea of not guilty, P.P.H. was further detained at multiple correctional facilities in the City of New York from June 7, 2016 until approximately November 3, 2016.

25.  For a period of five months, from June 7, 2016, until November 3, 2016, plaintiff was caused to appear in criminal court multiple times to defend himself and was put in apprehension of loss of liberty and his rights and privileges due to incarceration. Although innocent, P.P.H. faced a prison sentence of up to 30 years if convicted and was put under immense pressure to confess to a crime that he did not commit in return for a reduced sentence of imprisonment.

26.  Plaintiff was caused to return to the Court multiple times before the case was dismissed on November 3, 2016.

27.  The decision to arrest the plaintiff was objectively unreasonable under the circumstances.

28.  That prior to and while plaintiff was being detained, defendants Reyes, Brady and Terrell individually and/or collectively completed arrest paperwork, in which they swore in part, that the plaintiff had committed a crime and/or offense.

29.  The factual claim by the defendant officers was materially false and the defendant officers knew it to be materially false at the time they first made it, and every time thereafter when they repeated it.

30. That the defendant officers forwarded these false allegations to the Bronx County District Attorney ("BCDA") in order to justify the arrests and to persuade the BCDA to commence the plaintiff's criminal prosecution.

31. That as a direct result of these false allegations by the defendant officer, the plaintiff was criminally charged under Docket Number 2016 BX 025120.

32. At no time prior to or during the above events was there probable cause to arrest the plaintiff, nor was it reasonable for the defendants to believe that probable cause existed.

33. The defendant officers intentionally and deliberately gave false statements and/or failed to file accurate or corrective statements, or otherwise failed to report the conduct of the defendants who engaged in the misconduct described herein as required.

34. As a direct and proximate result of defendants' actions, plaintiffs suffered and continue to suffer injuries, including but not limited to, emotional distress, nightmares, and unwarranted severe anger bouts some or all of which may be permanent.

35. The false arrest of plaintiffs, plaintiffs wrongful imprisonment because of defendants' knowledge of a lack of any legitimate cause or justification, were intentional, malicious, reckless and in bad faith.

36. As a direct and proximate result of defendants' actions, plaintiff was deprived of rights, privileges and immunities under the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the City of New York and the State of New York.

37. Defendant City of New York, as a matter of policy and practice, has with deliberate indifference failed to

properly sanction or discipline police officers including the defendants in this case, for violations of the constitutional rights of citizens, thereby causing police officers including defendants in this case, to engage in unlawful conduct.

38.   Defendant City of New York, as a matter of policy and practice, has with deliberate indifference failed to sanction or discipline police officers and Prosecutors, who are aware of and subsequently conceal violations of the constitutional rights of citizens by other police officers and Prosecutors thereby causing and encouraging police officers and Prosecutors including defendants in this case, to engage in unlawful conduct.

39.   That the defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and over the New York City Police Department (NYPD) and the Bronx District Attorney's Office.

40.   Defendant New York City had actual or constructive knowledge that there was inadequate supervision over and /or within the NYPD with respect to its members' abuse of their authority, abuse of arrest powers and other blatant violations of the United States Constitution and rules and regulations of the NYPD.  Despite ample notice and/or knowledge of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put in place to ensure that NYPD members engaged in police conduct in a lawful and proper manner, inclusive of use of their authority as law enforcement officers with respect to the general public and specifically the plaintiff herein.

41.   The defendant City of New York deliberately and

intentionally chose not to take action to correct the chronic, systemic and institutional misuse and abuse of police authority by its NYPD employees and thereby deliberately and intentionally adopted, condoned and otherwise created through deliberate inaction and negligent supervision and NYPD policy, practice and custom of utilizing illegal and impermissible searches, arrests and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond plaintiff's arrest.

42. That all of the acts and omissions by the defendant officers described above were carried out pursuant to overlapping policies and practices of the municipal defendant in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD.

43. The existence of the unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in a long history of civil actions in state and federal courts.

44. In an Order dated November 25, 2009, in <u>Colon v. City of New York, 09 CV 0008 (EDNY)</u>, the court held that:

> *Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration—through selection of candidates for the*

*police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department—there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.*

45. That on more than half of the occasions where the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether.

46. That the defendant New York City has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk and the inadequate level of supervision would lead to violation of individuals constitutional rights in general, and caused the violation of plaintiff's rights in particular.

47. The actions of all defendants, acting under color of State law, deprived plaintiff of his rights, privileges and immunities under the laws and Constitution of the United States; in particular, the rights to be secure in his person and property, to be free from the excessive use of force and from malicious prosecution, abuse of process, and the right to due process.

48. By these actions, defendants have deprived plaintiff of rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. Section 1983.

## AS A FIRST CAUSE OF ACTION: AGAINST EACH DEFENDANT OFFICER FOR FALSE ARREST AND FALSE IMPRISONMENT UNDER 42 U.S.C § 1983

49. By this reference, plaintiff incorporates each and every prior allegation and averment of this complaint as though fully set forth herein.

50. The arrest, detention and imprisonment of plaintiff was without just or probable cause and without any warrant or legal process directing or authorizing the plaintiff's arrest or subsequent detention.

51. As a result of plaintiffs' false arrest and imprisonment, he has been caused to suffer humiliation, great mental and physical anguish, embarrassment and scorn among those who know him, was prevented from attending to his necessary affairs, and has been caused to incur legal expenses, and has been otherwise damaged in his character and reputation.

52. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

53. Defendants Reyes, Brady and Terrell were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers acts as described above.

## AS A SECOND CAUSE OF ACTION: AGAINST DFENDANTS REYES, BRADY, TERRELL AND SLOTT, FOR MALICIOUS PROSECUTION UNDER 42 U.S.C§ 1983

54. By this reference, plaintiff incorporates each and every preceding allegation and averment of this complaint as though fully set forth herein.

55. The commencement and continued prosecution of the criminal judicial proceeding against plaintiff, including the

arrest, the imprisonment, and the charges against plaintiff were committed by or at the insistence of the defendant police officers without probable cause or legal justification, and with malice.

56. That NYPD members Brady, Terrell, Reyes, and ADA Slott, were directly involved in the initiation of criminal proceedings against the plaintiff.

57. That ADA Slott participated in the investigation of the crime by interrogating Mr. Stevens, attempting to suborn false testimony from Mr. Stevens against the plaintiff, and threatening Mr. Stevens with further harassment if he did not falsely testify against the plaintiff.

58. That the defendant officers and ADA Slott lacked probable cause to initiate criminal proceedings against the plaintiff.

59. That the defendant officers and ADA Slott acted with malice in initiating criminal proceedings against the plaintiff.

60. That defendant officers and ADA Slott were directly involved in the continuation of criminal proceedings against the plaintiff.

61. That the defendant officers and ADA Slott lacked probable cause in continuing criminal proceedings against the plaintiff.

62. That the defendant officers and ADA Slott acted with malice in continuing criminal proceedings against the plaintiff.

63. That the defendant officers misrepresented and falsified evidence throughout all phases of the criminal proceeding.

64. That the defendant officers misrepresented and falsified evidence to the prosecutors in the Bronx County District Attorney's office.

65. That the defendant officers withheld exculpatory evidence from the prosecutors in the Bronx County District

Attorney's office.

66. That ADA Slott withheld exculpatory evidence from plaintiff's criminal defense counsel in violation his duties and responsibilities under the Brady Rule to turn over such evidence.

67. That the defendant officers did not make a complete statement of facts to the prosecutors in the Bronx County District Attorney's office.

68. The criminal judicial proceeding initiated against plaintiffs was dismissed on November 3, 2016, and terminated in the plaintiff's favor.

69. The arrest, imprisonment and prosecution of the plaintiff was malicious and unlawful, because plaintiff had committed no crime and there was no probable cause to believe that plaintiff had committed any crimes.

70. The defendant officers actions and that of ADA Slott were intentional, unwarranted and in violation of the law. The defendant officers and ADA Slott had full knowledge that the charges made before the Court against the plaintiffs were false and untrue.

71. As a consequence of the malicious prosecution by the defendant officers and ADA Slott, plaintiffs suffered a significant loss of liberty, humiliation, mental anguish, depression, and his constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages, in the amount of to be determined at trial, against defendant officers, individually and severally.

72. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiffs sustained the damages herein before stated.

## AS A THIRD CAUSE OF ACTION: AGAINST EACH DEFENDANT OFFICER: DENIAL OF A CONSTITUTIONAL RIGHT TO A FAIR TRIAL UNDER 42 U.S.C § 1983 DUE TO THE FABRICATION/FALSIFICATION OF EVIDENCE

73.  By this reference, plaintiff incorporates each and every preceding allegation and averment of this complaint as though fully set forth herein.

74.  Defendants Brady and Terrell created false evidence against the plaintiff and forwarded it to the Bronx District Attorneys Office. Defendant Reyes forwarded false evidence against the plaintiff to the Bronx District Attorney's office knowing such evidence to be false.

75.  Each defendant officer forwarded false evidence and false information to the prosecutors in the Bronx County District Attorney's office.

76.  Each defendant officer was directly involved in the initiation of criminal proceedings against the plaintiff.

77.  Each defendant officer lacked probable cause to initiate criminal proceedings against the plaintiff.

78.  Each defendant officer acted with malice in initiating criminal proceedings against the plaintiff.

79.  Each defendant officer was directly involved in the continuation of criminal proceedings against the plaintiffs.

80.  Each defendant officer lacked probable cause in continuing criminal proceedings against the plaintiffs.

81.  Each defendant officer acted with malice in continuing criminal proceedings against the plaintiff.

82.  Each defendant officer misrepresented and falsified evidence throughout all phases of the criminal proceeding.

83.  Each defendant officer misrepresented and falsified evidence to the prosecutors in the Bronx County District Attorney's office.

84. Each defendant officer withheld exculpatory evidence from the prosecutors in the Bronx County District Attorney's office.

85. Each defendant officer did not make a complete statement of facts to the prosecutors in the Bronx County District Attorney's office.

86. By creating false evidence against the plaintiff; forwarding false evidence and information to the prosecutors; and by providing false and misleading testimony throughout the criminal proceedings, the defendant officers violated the plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

87. As a consequence of the defendant officers' actions, the plaintiff suffered loss of liberty, humiliation, mental anguish, depression, loss of wages from work, and his constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages in an amount to be determined at trial, against each defendant officer, individually and severally.

## AS A FOURTH CAUSE OF ACTION: AGAINST EACH DEFENDANT OFFICER: FAILURE TO INTERVENE UNDER 42 U.S.C § 1983

88. By this reference, the plaintiff incorporates each and every allegation and averment set forth in all previous paragraphs of this complaint as though fully set forth herein.

89. Each defendant officer had an affirmative duty to intervene on the plaintiff's behalf to prevent the violation to his constitutional rights, as more fully set forth above.

90. Each defendant officer failed to intervene on the

plaintiff's behalf to prevent the violation of his constitutional rights, despite having had a realistic and reasonable opportunity to do so. As a consequence of the defendant officer's individual and/or collective actions, the plaintiff suffered loss of liberty, humiliation, mental anguish, depression, serious personal injuries, and his constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages, in an amount to be determined at trial, against the defendant officers, individually and severally.

## AS A SEVENTH CAUSE OF ACTION AGAINST THE DEFENDANT CITY OF NEW YORK: MUNICIPAL LIABILITY UNDER 42 U.S.C § 1983

91. By this reference, plaintiffs incorporates each and every preceding allegation and averment of this complaint as though fully set forth herein.

92. The defendant officers arrested and incarcerated the plaintiff in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize the plaintiff's liberty, well-being, safety and constitutional rights.

93. The acts complained of were carried out by the individual defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

94. The defendant officers acted under color of law, in their official capacity, and their acts were performed pursuant to the customs, policies, usages, practices, procedures and rules of the City of New York and its police department.

95. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and its police

department include, but are not limited to the following unconstitutional practices:

a. Wrongfully arresting individuals on the pretext that they are engaged in illegal or criminal conduct;

b. manufacturing evidence against individuals allegedly involved in illegal or criminal conduct;

c. unlawfully searching detainees and/or their property in the absence of any reasonable suspicion that said individuals were concealing weapons or contraband;

d. arresting innocent persons in order to meet "productivity" goals (i.e. arrest quotas); and

e. wrongfully and unreasonably brutalizing innocent members of the public, despite the lack of probable cause to do so.

96. The aforesaid event was not an isolated incident. The City and its police commissioner has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City and its police commissioner have allowed policies and practices that allow the aforementioned to persist.

97. For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have

experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

98. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event, such as the matter at bar, that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which has been done on many occasions.

99. Further, the City and its police commissioner have no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected.

100. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken

in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.

101. The existence of the aforesaid unconstitutional customs and policies may also be inferred from the admission by Deputy Commissioner Paul J. Browne, as reported by the media on January 20, 2006, that commanders are permitted to set "productivity goals".

102. Furthermore, the existence of the aforesaid unconstitutional customs and policies may also be inferred from the ruling (Docket entry 32) of the Court (Eastern District of New York), in the case(s) of Jose Colon v. City of New York, et al (09-cv-8) and Maximo Colon v. City of New York, et al (09-cv-9), wherein the Court stated, *inter alia*, that "*Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting officers of the New York City Police Department*", and that "*there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving the illegal conduct of the kind now charged*".

103. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York, constituted a deliberate indifference to the safety, well-being and constitutional rights of all defendants, including but not limited to the plaintiff; were the proximate cause of, and moving force behind, the constitutional violations suffered

by the plaintiff as alleged herein, and deprived plaintiff of the following rights, privileges and immunities secured to him by the Constitution of the United States:

(a)   The right of the plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States.

(b)   The right of the plaintiff not to be deprived of life, liberty, or property without due process of law, and the right to the equal protection of the laws, secured to him by the Fifth and Fourteenth Amendments to the Constitution of the United States.

(c)   The right to be free from unreasonable detention and/or continued detention without probable cause in that the plaintiff was detained.

(d)   The right to be free from the use of excessive force.

104. As a result of the actions of the defendants, the plaintiff was deprived of his rights, privileges, and immunities secured by the United States Constitution, in particular, the Fourth, Fifth, and Fourteenth Amendments, in contravention of 42 USC §1983 and the laws of New York State, and New York City without just or legal cause when defendant City, by its employees and/or agents unlawfully arrested and imprisoned the plaintiff thereby depriving him of his liberty without due process of law.

105. The defendant officers were the actual agents of the defendant City of New York and were following the customs, practices, ordinances and/or regulations of the City of New York when they violated the plaintiff's constitutional and civil rights, and the City of New York is therefore responsible for their acts, and liable to the plaintiff for

the damages he suffered.

106. The actual principal/agent relationship between defendant City and the defendant officers was created by the fact they were employees of defendant City, and the City had the right to, and it did indeed regulate and control the activities and conduct of the defendant officers.

107. The defendant officers actions were vicious, wicked, cold-hearted, intentional, malicious, unwarranted and in violation of the law. The individual defendants had full knowledge that the charges made before the Court against the plaintiff were false and untrue.

**WHEREFORE,** plaintiff respectfully requests judgment against the Defendants as follows:

1. For compensatory damages against all defendants in an amount to be proven at trial;
2. For exemplary and punitive damages against all defendants in an amount to be proven at trial;
3. For costs of suit herein, including plaintiff's reasonable attorney's fees; and
4. For such other and further relief as the court deems proper.

Dated: August 15, 2017,
       New York, New York

Chukwuemeka Nwokoro, Esq.
Nwokoro & Scola, Esquires
Attorney for Plaintiff
44 Wall Street, Suite 1218
New York, New York 10005
Tel. (212) 785-1060